J. FRANK McCALL v. TEXTILE INDUSTRIAL INSTITUTE
AND J. R. HOOVER.

(Filed 3 June, 1925.)

1. **Principal and Agent—Implied Powers—Secret Limitations—Notice—Corporations—Officers.**

The president of a corporation ordinarily has implied authority to authorize a real estate agent to sell its lands and evidence that he informed a proposed purchaser making inquiry that the sale of the property was in the hands of a real estate agent, and referred such purchaser to him without informing such purchaser that the agency was only for the purpose of securing offers for the board of directors or trustees to approve: *Held*, sufficient for the jury to determine whether the agent had sufficient power to bind the corporation to the sale of the land by a proper writing.

2. **Same.**

A purchaser of land from an agent to sell is not bound by secret limitations upon the agent's general power not disclosed to him.

3. **Appeal and Error—New Trials—Stare Decisis.**

Where upon the new trial granted on appeal by the Supreme Court the evidence is materially different from that on the former trial, the former adjudication is not conclusive and another appeal will lie.

4. **Same—Evidence—Nonsuit—Contracts—Specific Performance.**

Where the only question involved in a determinative issue is whether the duly authorized agent to sell land had signed the required writing for his principal as such agent, or simply as an attesting witness, and the place for the signature of the seller is left blank, and there is no other evidence except that the proposed purchaser was informed that the agent had authority only to submit to the owner offer for the property, in the purchaser's suit for specific performance the defendant is entitled to a judgment as of nonsuit upon his motion therefor.

APPEAL by defendant from *Webb, J.,* at November Term, 1924, of TRANSYLVANIA.

Action for specific performance of contract for conveyance of land. Plaintiff alleges that on 26 February, 1923, defendants "by and through their duly constituted agent, J. W. Alexander, contracted and agreed with plaintiff, J. F. McCall and one R. R. Fisher, to sell and convey to them" certain lands situate in Transylvania County, N. C., described in the complaint, at the price of ten thousand dollars, five hundred dollars of which was payable upon the execution of the contract, balance as stated therein; that he paid the five hundred dollars in cash, and had tendered the balance to defendants as full performance by him of the contract, and demanded performance by defendants; that, notwithstanding such tender and demand by him, defendants had refused and still refuse to convey said lands to plaintiff, as they had contracted to do.

Defendants deny the allegations of the complaint, except that plaintiff had demanded of them a deed conveying the lands to him. Defendants deny that J. W. Alexander was authorized by them or either of them, as agent or otherwise, to sell or enter into a contract, binding them or either of them to sell and convey said lands to plaintiff, and further deny that J. W. Alexander made or undertook to make a contract on their behalf as alleged in the complaint; defendants say that they "did allow said Alexander and other real estate dealers to try and sell said lands, and to present any offer or offers they or any of them may have received for the purchase of said lands, but the said defendants at all times retained the full right and power to refuse to accept any and all such offers, if they so desired."

It is alleged further that R. R. Fisher had duly assigned and transferred to the plaintiff all of his right and interest under said contract.

Plaintiff offered in evidence a paper-writing as follows:

### "Agreement to Sell and Buy

"In consideration of the sum of five hundred dollars this day received from J. F. McCall and R. R. Fisher, of Transylvania County, purchasers of the following described property. All those seven tracts of land in Transylvania County, N. C., now owned by Textile Industrial Institute and J. R. Hoover, containing 1018 acres more or less ...........

................................................................................................................

the purchase price being $10,000...............Seller to pay Commissions. And upon payment of the further sum of $3,000..... ...... ....dollars within thirty ...........days from this date and execution of note and mortgage for $6,500 on the above-described property...........payable as follows: $3,250 in six months from date and $3,250 in twelve months from date, bearing interest from date at the rate of six per cent per annum .............................. .................. .................................... sellers covenant and agree and bind themselves and their heirs or executors, administrators, successors and assigns, to convey the above-described property to the said J. F. McCall and R. R. Fisher, their heirs, executors, administrators or assigns, in fee by quit-claim deed, with dowers duly renounced, free from encumbrance except such as are herein agreed to be assumed. And upon tender of such deed the purchaser agrees to fully comply with the terms of this contract of sale. All taxes for 1923 to be paid by purchasers; interest, rents and insurance to be prorated to date of consummation of sale. .

Upon failure of the purchaser to comply with the terms hereof within the stipulated time, the seller to have the right to retain the amount this day paid, or to enforce the performance of this contract according to law.

McCALL v. INSTITUTE.

In witness whereof, we have hereunto set our hands and affixed our seals this 26 February, A.D. 1923.
Signed, Sealed and Delivered
    in the Presence of

........................................ ... ......................L. S.
*Seller*

.................................................L. S.
*Seller*

J. W. ALEXANDER
MARY SOMAINI

             J. F. McCALL,     .    L. S.
                     *Purchaser*
           R. R. FISHER,       L. S.
                     *Purchaser.*"

Plaintiff then offered in evidence a check, dated 26 February, 1923, payable to the order of "J. W. Alexander, agent of the Textile Industrial Institute," for five hundred dollars, drawn on Pisgah Bank, Brevard, N. C., and signed by J. F. McCall. This check, endorsed by payee, was paid on 3 March, 1923, by Pisgah Bank.

There was evidence offered by plaintiff, tending to show that J. W. Alexander was engaged in the business of a real estate agent, at Spartanburg, S. C., and that he was the agent of defendants, and was authorized to sell the lands described in the complaint. Evidence offered by defendant tended to show that J. W. Alexander had authority only to negotiate for offers from prospective purchasers for said lands, and had no authority from defendants or either of them to make a contract for the sale and conveyance of the lands by defendants.

W. C. Cook, witness for plaintiff, testified that on 26 February, 1923, J. F. McCall and R. R. Fisher came to his office in Spartanburg, S. C., and told him that they wished to purchase the lands in Gloucester Township, Transylvania County, N. C., owned by the Textile Industrial Institute, and asked if he could put them in touch with some one who had authority to sell the lands; that he phoned to Dr. C. E. Camack, president of the institute, informing him of the presence of plaintiff and Fisher in his office and of their desire with respect to these lands, and that Dr. Camack replied, "I am not the man they want to see; they want to see J. W. Alexander, who has the matter in charge." Witness thereupon made an engagement with Mr. Alexander for McCall and Fisher to see him that day at his office in regard to the purchase of the land.

J. F. McCall testified that, as a result of negotiations between J. W. Alexander, as agent of defendants, and himself and R. R. Fisher, the

terms of a contract for the sale of said lands were agreed upon and that "two contracts were drawn up, and the first was signed by himself and Fisher and by Mr. Alexander and his stenographer; that the paper-writing offered in evidence was the original memorandum of agreement, and that same was filed for registration in Transylvania County on 29 March, 1923." He also testified that he signed and delivered to Alexander the check for five hundred dollars offered in evidence. He said, "I did not take this contract back with me; Alexander said, 'Do you men have to go back tonight?' and we said 'No,' and he said, 'I believe I can get the papers ready for you,' and we got to talking and we walked off and left the papers there; I was talking to Mr. Fisher, coming up the mountain, and I said, 'Have you got the papers?' and he said, 'No.' Immediately after I got my check back, which was about a week afterward, I called Alexander over the telephone and asked him to send me the papers; on the contract the sellers' seals are left blank, and Mr. Alexander and Miss Somaini signed their names under the name witnesses and the Textile Industrial Institute never signed the papers. Alexander sent my check for $500 back. I have it yet; I have never cashed it."

C. P. Hammond, witness for defendants, testified that he was, on 26 February, 1923, and had been since the organization of the institute, chairman of the board of trustees; that he knew that the institute owned the Robinson lands in Transylvania County, N. C. "We never authorized Dr. C. E. Camack to make any contract for the sale of said lands at any time during his connection with the institute; all the sales of real estate or other property were brought before the board of trustees and passed upon by them. It had to come before us, before the trustees or the executive committee, which was appointed by the board of trustees to act for the board; neither the board of trustees nor the executive committee ever authorized J. W. Alexander or Dr. Camack to make any contract for the sale of the lands in Transylvania County prior to 26 February, 1923. We put the sale of this land in Mr. Alexander's hands to get offers and submit to our board, but we never gave him, or any one else, authority to sell the land without submitting the offer to us and be closed and acted upon by us." Witness testified that the institute never received any of the proceeds of the check for $500 delivered to J. W. Alexander, agent for the Textile Industrial Institute.

D. E. Camack, witness for defendant, testified that he was president of the Textile Industrial Institute and secretary of the board of trustees on 26 February, 1923; that on said day, in reply to question of Mr. Cook over the telephone, he told him to see J. W. Alexander in regard to negotiations for the purchase of the lands in Transylvania

County; that he did not tell Mr. Cook that Alexander had authority only to secure bids or offers to be submitted to the board of trustees. Mr. Alexander had been requested by witness to secure bids on the land to be submitted to the board for their approval.

J. W. Alexander, witness for defendant, testified that, in consequence of engagement made through Mr. Cook, he met plaintiff and R. R. Fisher in his office at Spartanburg, S. C., on 26 February, 1923. That he told them that he had no right to sell the land, but would be glad to submit an offer. As a result of negotiations, witness agreed to submit to the board of trustees of the institute an offer by plaintiff and Fisher of $10,000 for the lands. "I told them I would submit an offer of ten thousand dollars if they would put up a check, and they agreed to do that. I had my stenographer to draw up this agreement to sell and buy and had them to sign it, and my stenographer and I witnessed it. I signed two papers. I told them that it was possible that I would be able to submit it and reach them before they left the city. I found that it would be impossible to get the members of the board together immediately, and so informed plaintiff and Fisher at their hotel, over the telephone. I told them that I would submit their offer, and that if there was a counter-proposition I would give them the first show at the counter-proposition. They told me to keep the check for $500 and submit the offer. I deposited the check, because I wanted to be sure that the offer, when submitted, was bona fide."

Witness testified that he used the form of agreement to buy and sell in his business as real estate dealer, and that under the law of South Carolina, two witnesses are required to the signatures. That he had met defendant, J. R. Hoover, but that Hoover had never authorized or empowered him to sell the lands or make a contract to sell the lands with J. F. McCall and R. R. Fisher.

Mrs. M. L. Manini, witness for defendants, testified that she was before her marriage Miss Mary Somaini; that on 26 February, 1923, she was employed as stenographer in the office of J. W. Alexander; that she remembered the transaction between Mr. Alexander and Mr. McCall and Mr. Fisher. "I prepared the paper which was handed me and signed my name as witness. I made one original and one copy. Mr. Alexander told Mr. McCall and Mr. Fisher to make him an offer for the land and he would submit it to the board of trustees of the Textile Industrial Institute. They made the offer and I prepared the papers. The instrument was executed in duplicate, and Mr. Alexander kept both. He had to submit them to the trustees, and if they accepted the offer they were to sign them and Mr. Alexander was to return the copy to Mr. McCall and Mr. Fisher. I heard Mr. Alexander tell Mr. McCall and Mr. Fisher this."

R. R. Fisher, witness for defendants, testified that he was present in Mr. Alexander's office at time of negotiation with respect to the lands. "Mr. McCall offered Mr. Alexander $9,000 for the land, and he said he would not take that. After deliberation, we made an offer of $10,000. Mr. Alexander then had his stenographer to draw the contract. He had two of them made, and we signed both. I know we signed them and then turned them over and he signed. As to why we did not get one, I don't know, other than he said, 'Where are you gentlemen stopping?' We said, 'At the Gresham,' and he said, 'Maybe I can get hold of the trustees, and if I can I may be able to get the deed for you this evening.' We were to wait at the hotel until he could see the trustees and get the deal made for us that day. He later called us at the hotel and said the trustees were scattered and he could not get them together. He said he would have to wait a few days until he could get them together. We then left for our homes."

There was other evidence offered by both plaintiff and defendants. The issues submitted to the jury, with answers, are as follows:

1. On 26 February, 1923, was J. W. Alexander the agent of the defendants to sell the land in controversy? Answer: Yes.

2. If so, was the memorandum of sale, marked "Plaintiff's Exhibit 1," introduced in this cause, signed by the said J. W. Alexander, as agent of the said defendants? Answer: Yes.

3. Did the defendants, through their duly constituted agent, J. W. Alexander, contract and agree with the plaintiff, J. Frank McCall and one R. R. Fisher, to sell and convey to them the land described in paragraph one of the complaint, at the price of ten thousand dollars, as set out in the memorandum of agreement marked "Plaintiff's Exhibit 1"? Answer: Yes.

4. Has the plaintiff at all times been ready, able and willing to pay the price for said land set out in the said memorandum of agreement, according to the terms therein? Answer: Yes.

From the judgment and decree rendered upon this verdict, defendants appealed, assigning errors, based upon exceptions duly noted.

*D. L. English and C. B. Deaver for plaintiff.*
*W. E. Breese and Mark W. Brown for defendants.*

CONNOR, J. This action was first tried at December Term, 1923, of Superior Court of Transylvania County. From a judgment of nonsuit, at the close of all the evidence (C. S., 567), plaintiff appealed. This Court held that, upon the evidence offered at that trial, there was error in nonsuiting plaintiff. The opinion, in accordance with the decision of the Court, was written by the late *Chief Justice Clark* and was filed after his death, by order of the Court. 187 N. C., 757.

Upon the former appeal it was held that there was sufficient evidence to be submitted to the jury upon plaintiff's allegation and contention that J. W. Alexander was the agent of defendants, with authority to sell and contract for the conveyance of the lands in controversy by defendants. There is no substantial difference in the evidence offered at the former trial and that offered at the trial resulting in the judgment which we are now asked to review, upon appeal, with respect to this phase of the case. We have held in *O'Donnell v. Carr, ante,* 77, that an agent's authority from his principal to sell real estate is not to be readily inferred, but exists only where the intention of the principal to give such authority is plainly manifest. In the absence of special authority, the agent who is authorized by his principal to negotiate for the sale of real estate has no power to bind his principal by contract to convey; *Combes v. Adams,* 150 N. C., 64. In the instant case the relationship of principal and agent between defendants and J. W. Alexander, with respect to the sale of the lands of defendants, is admitted. It is denied, however, that because of such relationship the authority of the agent to make a contract for the sale and conveyance of the lands is to be presumed. Both principal and agent contend that the agent was authorized only to negotiate for the sale with a prospective purchaser and to submit offers to his principals for their approval or rejection. Conceding that this may be true as to the express authority conferred upon the agent, plaintiff contends that, upon the facts which the evidence tends to establish, the authority not only to sell, but also to make a contract for the conveyance of the lands to the purchaser, binding on his principals, was within the apparent scope of the agent's authority. There is evidence that the president of the Textile Industrial Institute, in reply to plaintiff's inquiry as to who had authority to sell the lands owned by defendants, stated that he was not the man; that J. W. Alexander had the matter of the sale of the lands in charge. Plaintiff, relying upon this statement, sought Alexander and dealt with him as agent of defendants for the sale of the land, without notice of any limitations upon his authority. The extent of the agent's authority was a matter of fact for the jury, and there is evidence sufficient to be submitted to them upon the contention of plaintiff; *Wynn v. Grant,* 166 N. C., 39; *Cardwell v. Garrison,* 179 N. C., 476; 21 R. L. C., 54, and cases cited. There was also sufficient evidence for the consideration of the jury upon plaintiff's contention that Dr. Camack, president of Textile Industrial Institute, had authority to enter into contract with J. W. Alexander to sell the lands. There was no error in declining to nonsuit the plaintiff upon either of these grounds.

Conceding that there was evidence from which the jury could answer the first issue in the affirmative, a serious question is presented by

defendant's contention that there is no evidence sufficient to be submitted to the jury upon the second issue. If this contention is sustained, there was error in declining the motion for judgment of nonsuit at the close of all the evidence. If the paper-writing offered as a memorandum of the contract for the sale and conveyance of the lands was not signed by the party sought to be charged, or by some other person by him thereto lawfully authorized, the action cannot be maintained. C. S., 988. A parol contract to sell or convey land may be enforced, unless the party to be charged takes advantage of the statute by pleading the same. But a denial of the contract, as alleged, is equivalent to a plea of the statute; *Miller v. Monazite Co.,* 152 N. C., 609; *Henry v. Hilliard,* 155 N. C., 373; *Arps v. Davenport,* 183 N. C., 72.

The memorandum in writing required by the statute must be signed by the party to be charged or by some other person by him thereto lawfully authorized. It is not sufficient that the other person who, it is alleged, signed his name upon the memorandum was lawfully authorized to do so by the party to be charged. The signing of a paper-writing or instrument is the affixing of one's name thereto, with the purpose or intent to identify the paper or instrument, or to give it effect as one's act. Black's Law Dictionary, p. 1088; Words and Phrases, vol. 7, 6508.

Upon the former appeal this Court held that there was error in allowing the motion to nonsuit. This decision is the law of this case and may not be reviewed upon appeal from a new trial; *Ray v. Veneer Co.,* 188 N. C., 414; *Strunks v. R. R.,* 188 N. C., 567, unless the evidence upon the second trial is substantially different from that in the former trial; *Armstrong v. Spruill,* 186 N. C., 18.

The name of J. W. Alexander, admittedly written by him, appears on the paper-writing offered in evidence as the memorandum required by the statute. The second issue, therefore, involves only the intent or purpose with which he wrote his name upon the paper. This must, as *Chief Justice Clark* says, be ascertained by the jury. The burden is on the plaintiff. Whether there is evidence from which the jury could answer the issue in the affirmative is a question of law and is presented to the court for decision by the motion for judgment of nonsuit. C. S., 567.

The evidence chiefly relied upon by plaintiff on both the former appeal and on this appeal is the paper-writing itself. Plaintiff contended on the former appeal that the location of the signature on the paper-writing was evidence that J. W. Alexander signed his name as agent of his principals, with intent thereby to bind them and not as witness to the signatures of J. F. McCall and R. R. Fisher. The record upon this appeal shows a different location of the signature; it is written under words indicating the place for the signature of a witness

and is immediately opposite the names of the purchasers. In the record of the "agreement to sell and buy," on this appeal, there are blanks in the body of the paper indicating that it was not completed by the insertion of the names of the sellers. In this respect it differs materially from the record on the former appeal. The names of defendants appear nowhere on the paper-writing, except in the general description of the lands, which are the subject-matter of the contract. The dotted lines at the end of the paper-writing, above the word "seller," are blank in both records. The law in South Carolina requires two witnesses; the paper shows two names written thereon in the space indicated for the signatures of witnesses. One of these names is J. W. Alexander.

There was no evidence upon either appeal of the intent with which J. W. Alexander signed his name except the paper-writing itself. This appears from the opinion in the former appeal. The testimony of the plaintiff, the only witness offered by him, who was present when the paper was signed, is to the effect only that J. W. Alexander signed his name after he and Fisher had signed their names, and that both the original and the copy were left with Alexander. The testimony of Alexander and Miss Somaini, offered by defendants, corroborated the paper-writing itself that J. W. Alexander signed, as did Miss Somaini, as witness to the signatures of McCall and Fisher.

We are of the opinion that upon the record in this appeal there is no evidence sufficient to be submitted to the jury upon the second issue. The substantial difference between the evidence at the second trial and the evidence as it appeared in the record upon appeal from the former trial was apparently not called to the attention of the learned judge from whose judgment this appeal was taken. Plaintiff's action should have been dismissed; in denying defendant's motion for judgment of nonsuit, there was

Error.