ROSA P. MADDOX, ADMINISTRATRIX OF THE ESTATE OF FELIX L. MADDOX, DECEASED, v. GEORGE W. BROWN AND QUEEN CITY COACH COMPANY, A CORPORATION.

(Filed 1 November, 1950.)

**1. Automobiles § 14—**

Where a motorist follows a motorcyclist on the inside or passing lane of a four lane highway, the motorist is under duty to refrain from any effort to pass the motorcycle so long as it continues to travel in the passing lane, notwithstanding the cyclist may refuse to yield the right of way.

MADDOX *v.* BROWN.

**2. Same—**

Where a cyclist is traveling on the right or slow traffic lane of a four lane highway, and a motorist traveling on the inside or passing lane signals by horn his intention to pass, the act of the cyclist 'in suddenly cutting his vehicle to the left and colliding with the right front portion of the motorist's vehicle, is negligence constituting at least a proximate cause of the collision.

**3. Automobiles §§ 18h (2), 18h (3)—**

Conflicting evidence as to whether a cyclist was traveling on the inside or passing lane of a four lane highway, or was traveling on the right or slow traffic lane, and turned to his left and collided with a vehicle traveling on the inside or passing lane, which had given signal by horn of intention to pass, *is held* to require the submission of appropriate issues to the jury.

**4. Automobiles § 8a—**

Where all the evidence shows that a motorist saw plaintiff's intestate who was riding a motorcycle in front of him traveling in the same direction, and gave repeated warnings by sounding his horn of his approach to the cyclist, the evidence fails to sustain an allegation that the motorist failed to keep a proper lookout as an element of negligence in plaintiff's action to recover for the death of the cyclist, killed in a collision with the motorist's vehicle.

**5. Automobiles § 8i—**

Where the evidence tends to show that some 700 to 900 feet before reaching an intersection, a motorist began signaling by horn a motorcycle traveling in the same direction in front of him on the highway, and that the collision occurred some 150 feet before reaching the intersection, *held* the evidence fails to show an intersection accident case, and the law as to speed at highway intersections is inapplicable.

**6. Automobiles § 8c—**

The mere fact that a motorcyclist traveling on the right side of the passing lane of a four lane highway veers to the left of such lane, without any signal whatever, is insufficient to indicate or give notice of his assumed intention to make a left turn.

**7. Trial § 31b—**

*Allegata* and *probata* must correspond to each other to be effective, and it is error for the court to charge upon proof which is not supported by allegation.

**8. Automobiles § 18i—**

Where the court charges the duty of a motorist to maintain a safe distance behind another traveling in the same direction, G.S. 20-152, it is error for the court to fail to charge also as to the right of a motorist in overtaking and passing another as authorized by G.S. 20-149 or the right of a motorist traveling in the inside or passing lane of a four lane highway to overtake and pass a vehicle traveling in the right or slow lane traffic, when such qualifications of the general rule are made pertinent by the evidence adduced.

MADDOX *v.* BROWN.

**9. Same—**

Where there is no evidence that a motorist intended or gave any notice of intention to make a left turn, it is error for the court to charge the law as to the duties of a motorist following in the same direction who has been given the statutory left turn signal by the preceding motorist.

**10. Trial § 31b—**

It is error for the court to charge the law on an aspect of the case entirely unsupported by the evidence.

On rehearing.

The facts appear in the original opinion, *Maddox v. Brown, ante,* 244. While there are some inaccuracies in the facts as there stated, and some come from the briefs rather than the record, the general setting of the case is there made to appear.

*Smathers & Carpenter for plaintiff appellee.*
*Robinson & Jones for defendant appellants.*

BARNHILL, J.   There is testimony in the record from which a jury may find that the deceased and Brown, the bus driver, were both traveling in the passing lane, going west; that Brown signaled his desire to pass deceased who was on a motorcycle ahead; that deceased did not immediately yield the right of way but continued on in the passing lane; that Brown did not slow up, but, instead, continued on and attempted to cut around the motorcycle while it was still in the same lane; that in so doing, he struck the motorcycle; and that the deceased was thrown to the pavement, receiving injuries in his fall which caused his death.

So long as the deceased remained in the passing lane, if in fact he was in that lane, it was the duty of Brown to refrain from any effort to pass him.   The mere fact deceased would not yield the right of way did not relieve Brown of the duty to exercise due care in that respect.   *Ward v. Bowles,* 228 N.C. 273, 45 S.E. 2d 354.

On the other hand, there is testimony coming from witnesses for plaintiff as well as witnesses for defendant tending to show that the deceased was traveling on a motorcycle in the outer or slow traffic lane and the bus was in the inner or passing lane; that Brown blew his horn several times to give notice of his intention to pass; that just as the bus came almost abreast of the motorcycle, the deceased suddenly cut his vehicle to the left and collided with the right front portion of the bus near the door, and that Brown, in an attempt to avoid the collision, drove across the center line of the highway and proceeded on and parked on the left-hand side of the road.

If this be the case, and the jury so finds, then the negligence of deceased was at least a proximate cause of the collision and resulting death.   *Van*

*Dyke v. Atlantic Greyhound Corp.,* 218 N.C. 283, 10 S.E. 2d 727; *Miller v. Motor Freight Corp.,* 218 N.C. 464, 11 S.E. 2d 300.

This conflicting testimony requires the submission of appropriate issues to a jury. For that reason the former opinion, in so far as it sustains the court below in its rulings on the motion to dismiss as in case of nonsuit, is approved and the petition to rehear on that phase of the case is denied.

The petition for rehearing on the exceptive assignments of error di-: rected to alleged error in the charge presents more serious questions· which require, in the first place, a careful examination of plaintiff's allegations of negligence.

She alleges (1) that Brown failed to keep a proper lookout for persons on the highway, (2) that he operated the bus at a high, reckless, and unlawful rate of speed, (3) that he attempted to pass deceased at or in an intersection in violation of G.S. 20-149,· and (4) that he attempted to pass the motorcycle while deceased was in the act of making a left turn from the highway.

There is no evidence in the record tending to support any one of these allegations. It is apparent from all the evidence that Brown was keeping a lookout, saw deceased, and gave ample warning of his approach. One witness for plaintiff went so far as to testify that the bus horn was blowing so continuously he thought it was "hung up."

The bus was being operated well within the maximum limit permitted by law under the circumstances, and the judge so charged the jury. And the plaintiff alleges no fact or circumstance which made it the duty of Brown to drive at a slower rate of speed. In this connection we must note that none of the conditions surrounding the collision are alleged.

This is not an intersection accident case. Brown began to signal deceased some 700 to 900 feet east of the intersection, and the collision occurred 150 feet or more before the vehicle reached the intersection.

There is not a particle of· evidence in the record tending to show deceased intended to make a left-hand turn or that he gave any signal of his intention to do so. The mere fact that in traveling along the highway on a motorcycle the deceased veered from the right to the left-hand portion of the passing lane, without any signal whatever, was not sufficient to indicate or give notice of his assumed intention to make a left turn.

This leaves only two other allegations of negligence upon which plaintiff must rely. She alleges that the "motorbike was struck from the rear by the . . . bus of the . . . defendant, which at the time was being operated in an unlawful, reckless and negligent manner and in reckless disregard of the safety of the plaintiff's intestate and other persons lawfully traveling upon said highway." She further alleges that "the oper-

ator of said large passenger bus failed to slow, stop, pull aside or other-wise avoid striking, injuring and killing the plaintiff's intestate."

None of the circumstances which rendered Brown's manner of opera-tion of the bus "in disregard of the safety" of deceased or which required him, in the exercise of due care, "to slow, stop, pull aside" are alleged. Even so, the sufficiency of the allegations is not challenged. We must, however, bear in mind their limited nature in considering the exceptions to the charge.

There must be *allegata* and *probata,* and the two must correspond to each other. The plaintiff must make out her case *secundum allegata,* and the court cannot take notice of any proof· unless there is a corresponding allegation. *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14.

The court instructed the jury that it was the duty of defendant's bus driver to remain such a distance behind the motorcycle as was reasonable and prudent, taking into consideration the highway, the traffic, etc. G.S. 20-152. This rule of the road does not apply where one motorist is over-taking and passing another, as authorized by G.S. 20-149, or where there are two lanes available to the motorist, as here, and the forward vehicle is in the outer lane and the overtaking vehicle is in the passing lane. But the court inadvertently failed to so qualify the rule in its charge.

The court then instructed the jury that if the deceased was in the center lane "intending to turn to the left," "was in the act of turning," "with the intention of turning," "in the act of making a left turn," it was not the duty of the deceased to yield the right of way but that, instead, it was the duty of the bus driver to decrease his speed to such an extent as to prevent a collision with the motorcycle *"or to turn his vehicle into the right-hand or outside lane and pass upon that side,"* and that if he did not decrease his speed or turn to the right and pass the motorcycle on its right, he was guilty of a breach of duty imposed by law.

Inadvertently this erroneous view of the law is brought forward in the former opinion where it is said: "The conclusion may be drawn from this evidence . . . that the tragedy might have been avoided if he had de-creased his speed and passed him on the right."

The vice of this instruction is threefold: (1) The rights and liabilities of the parties are made to depend on the mere intention of the deceased; (2) there is no testimony tending to show that the deceased intended to make a left-hand turn or that if he did so intend, he gave any notice of this intention to the driver of the vehicle to the rear; and (3) it tends to place a duty on defendants in conflict with the express provisions of the statute.

The operator of "a slow-moving vehicle" must drive his machine "as closely as possible to the right-hand edge or curb of such highway . . ." G.S. 20-146, and a motorist overtaking another vehicle proceeding in the

same direction shall pass at least two feet to the left thereof.　G.S. 20-149.

Had Brown turned his bus to the right in front of the milk truck in the outer lane to the rear, and the deceased had, at the same time, decided to yield the right of way, a collision would have been almost inevitable. At least, the situation that would have been created demonstrates the wisdom of the rule.

We may concede that, notwithstanding the provisions of this statute, a motorist may, in the exercise of ordinary care, pass another vehicle, going in the same direction, on the right of the overtaken vehicle when the driver of that vehicle has given a clear signal of his intention to make a left turn and has left sufficient space to the right to permit the overtaking vehicle to pass in safety.　Even so, that situation is not here presented, for there is no evidence the deceased gave any notice of an intention to make a left turn.

Other assignments of error are not without merit.　Even so, the questions they seek to present may not again arise.　Hence we need not discuss them here.

To the end that defendants may have a new trial, the petition to rehear is allowed.

Petition allowed.