ROSA P. MADDOX, ADMINISTRATRIX OF THE ESTATE OF FELIX L. MADDOX, DECEASED, v. GEORGE W. BROWN AND QUEEN CITY COACH COMPANY, A CORPORATION.

(Filed 2 May, 1951.)

**1. Appeal and Error § 51a—**

A decision of the Supreme Court on a former appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal.

**2. Same—**

Where, in granting a new trial, the Supreme Court expressly holds that the evidence was sufficient to be submitted to the jury, a motion to nonsuit in the subsequent retrial may be properly granted only if the evidence at the retrial varies in some material aspect from that offered on the first trial, and variances, discrepancies, omissions and additions in the evidence upon the second trial cannot justify nonsuit therein when such differences relate solely to minor details and the evidence at both trials is substantially the same.

**3. Trial § 22c—**

It is the province of the jury to dissolve discrepancies and dispose of contradictions in the evidence and therefore such discrepancies and contradictions cannot justify nonsuit.

**4. Evidence § 22—**

Much latitude is permitted on cross-examination to test the consistency and plausibility of matters related by a witness on direct examination, and therefore questions which might be improper on direct examination may be permitted upon cross-examination.

**5. Automobiles § 18g (4) : Evidence § 49—**

Testimony of an eyewitness that a bus pulled over far enough to get around a motorcycle traveling ahead of it in the same direction had the motorcycle continued straight ahead, may be upheld as a statement of composite fact and not objectionable as invading the province of the jury by expressing a theoretical opinion about a matter of simple physical fact.

APPEAL by plaintiff from *Bennett, Special Judge,* 8 January, 1951, Extra Civil Term, of MECKLENBURG.

Civil action by plaintiff to recover damages for the alleged wrongful death of her intestate husband resulting from the collision of a passenger bus, driven by the individual defendant for the corporate defendant on a regular run, and a motorcycle which the intestate was riding. Both vehicles were traveling in the same direction on a four-lane highway. The collision occurred while the bus driver was attempting to pass to the left of the motorcycle. The point of collision was near the double lines that mark the center of the highway.

At the close of plaintiff's evidence, the defendants moved for judgment of nonsuit. The motion was allowed, and from judgment based on such ruling, the plaintiff appealed, assigning errors.

*Smathers & Carpenter, R. Hoyle Smathers, and Lewis B. Carpenter for plaintiff, appellant.*

*Robinson & Jones for defendants, appellees.*

JOHNSON, J. This case was here at the Spring Term, 1950, on appeal by the defendants from judgment on a verdict in favor of the plaintiff. The decision, sustaining the action of the lower court in submitting the case to the jury and in upholding the verdict and judgment below, is reported in 232 N.C. 244, 59 S.E. 2d 791. Thereafter, upon rehearing, this Court reaffirmed the action of the lower court in holding that the evidence was sufficient to overcome the defendants' motion for nonsuit, but a new trial was granted for errors committed by the trial court in charging the jury. The opinion on rehearing is reported in 232 N.C. 542, 61 S.E. 2d 613.

The case comes back this time on appeal of the plaintiff from judgment as of nonsuit on motion of the defendants at the close of the plaintiff's evidence upon the retrial below.

It is settled law that a decision of this Court on a former appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal. *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366; *McGraw v. R. R.,* 209 N.C. 432, 184 S.E. 31; *Robinson v. McAlhaney,* 216 N.C. 674, 6 S.E. 2d 517.

Where the question of nonsuit has been decided in favor of the plaintiff on a prior appeal, it suffices for the plaintiff on retrial to offer substantially the same evidence. *Clark v. Sweaney,* 176 N.C. 529, 97 S.E. 474; *McGraw v. R. R., supra* (209 N.C. 432). A motion to nonsuit may be resolved against plaintiff only when the evidence on retrial varies in a material aspect from that offered on the first trial. *George v. R. R.,* 217 N.C. 684, 9 S.E. 2d 373; *McCall v. Institute,* 189 N.C. 775, 128 S.E. 349.

Therefore, it would seem that decision on the instant appeal lies in a narrow compass. It turns on the question of whether the evidence on the retrial was substantially the same as, or materially different from, that adduced at the previous trial. *Clark v. Sweaney, supra* (176 N.C. 529); *George v. R. R., supra* (217 N.C. 684).

We have studied and analyzed the records on both appeals. The physical facts showing location, highway dimensions and markings, weather conditions, and other background facts, with the exception of a few immaterial details, were shown at each trial to have been substantially the same. These background facts are set out in the two former opinions (232 N.C. 244 and 232 N.C. 542) and will not be restated, except in broad outline: The collision occurred on the morning of 9 July, 1947, on Wilkinson Boulevard (U. S. Highway No. 29) between Charlotte and Gastonia, about one hundred fifty feet east of the Berryhill Crossroads intersection. Wilkinson Boulevard is a four-lane highway. The center of the highway was marked with a double line. The north half was marked with a line dividing it into two traffic lanes. The south half was marked with a single line dividing it into two traffic lanes. The highway runs generally east and west. The north half was used for traffic going west toward Gastonia; the south half was used for traffic moving east toward Charlotte. The pavement is about forty-two feet wide. The sun was shining, and the surface of the roadway was dry. Both vehicles,— the motorcycle ridden by the intestate and the bus driven by the defendant Brown,—were traveling westerly toward Gastonia.

At a point about six hundred fifty feet east of the Berryhill Crossroads intersection, on the Charlotte side thereof, both vehicles were observed on the inside passing lane, with the motorcycle a short distance ahead of the bus. From there on, the vehicles traveled a further distance of about five hundred feet, with the bus driver signaling by horn his desire to pass the motorcycle. In the passing movement, which occurred about one

hundred fifty feet east of the Berryhill Crossroads intersection, the two vehicles collided, resulting in the death of plaintiff's intestate.

Decision on this appeal, as on the former one, hinges on the evidence showing the movements of the two vehicles during the last four or five hundred feet traveled,—from the time the bus driver began blowing to pass the motorcycle until in attempting to do so the two vehicles collided. On this crucial phase of the case, we have examined and compared the evidence offered by the plaintiff at each trial. The comparison discloses variances, discrepancies, omissions and some additions, in minor details. But in basic trend and content there is no material difference in the evidence adduced. It is substantially the same.

On both trials the plaintiff relied in large part on the testimony of two eyewitnesses,—George Wallace and Mrs. John LeGette. The defendants point to and rely upon variances in the testimony of these two witnesses as supporting the lower court in nonsuiting the case upon the retrial.

The witness George Wallace was in the Richfield service station side of the highway, drinking a soft drink, when the two vehicles approached from the east. At both trials he testified in effect that he heard a horn blowing like it "was hung up." He "hurried and got done drinking his drink" and went out front "to see what was the matter." When he got out in front of the station he looked toward Charlotte and saw a motor-cycle coming, with the bus about thirty-five feet behind; that both vehicles were about five hundred feet away when he first saw them. At the first trial, the witness said the motorcycle was in "the lane next to the center of the highway,—the lane right in the center of the highway." This time he said the motorcycle, when he first saw it, was in the middle of the highway, between the double lines marking the center. On the first trial, he said the man on the motorcycle "pulled back in front of the bus . . .; that when the motorcycle and the bus come together the man slid off on his face . . . The bus never even touched him." On cross-examination before, he said "the motorcycle did cut into the side of the bus . . . and I first said that the motorcycle cut into the left door, and I corrected that to say the right door." This time, he said "I watched them as they came on down the road towards me . . . well the bus went to pull around the motorcycle and the motorcycle pulled out in front of the bus, to the left side. . . . Both of them turned the same direction,—to the lefthand side . . . and when the bus turned to go around the left side, well the motorcycle turned left too, and run right into the front door." Wallace further testified the first time that the tail part of the motorcycle came into contact with the bus,—"The tail part back there," and that then the man slipped off on the left side of his face. He further said on cross-examination this time that the bus did not hit the rear of the motorcycle,

MADDOX *v.* BROWN.

but that the motorcycle ran into the right door of the bus when the bus was pulling over and had pulled over to pass it.

The witness Mrs. LeGette testified each time to what she saw from her position in the bus. She was seated on the second seat from the front, on the right side, but next to the aisle. She was reading a magazine, but looked up when the bus driver started blowing his horn to pass. She looked out through the windshield and saw the intestate on the motorcycle. He was so close that she could see him only from his shoulders up. At both trials she said in effect that the intestate kept moving over toward the left as the bus moved over: "They moved to the left several times. I don't know how many times." At the first trial, she testified she "looked straight out" through the windshield and saw the intestate. This time, she said she was looking out of the "extreme right of the windshield." Before, in describing the actual impact, she said "I just braced myself because I knew it was going to,—and the man on the motorbike turned and looked directly around at us,—just like that—and then it happened." On cross-examination before, she also said "I don't know where he hit." This time, she said the man on the bike "got out just far enough in front of the bus and looked directly around at us and just about the time that he looked around and turned his head, well that's when he hit the side of the bus." Before, she said "I couldn't tell where in the highway the man was at the time the collision took place." This time, she said "I thought the accident happened about in the middle,—center of the highway."

There are other differences and inconsistencies in the testimony of Mrs. LeGette, and also in the testimony of George Wallace and that of other witnesses, but these variations are not material and controlling. This being our over-all appraisal of the evidence, we deem it advisable, in order that neither side may be prejudiced on the next hearing, to refrain from making further detailed comparisons of the proofs offered at the previous trials. It suffices to say that the statement of Mrs. LeGette in describing the impact at the last trial: "Well, that's when he hit the side of the bus," does not perforce withdraw from the jury the plaintiff's theory that the bus driver failed to exercise due care in the passing maneuver, nor is it sufficient, when considered with the rest of the evidence favorable to the defendants, to saddle the plaintiff with contributory negligence as a matter of law. Still stands sufficient evidence to justify a jury verdict either for or against the plaintiff on the issue of negligence, and either for or against her on the issue of contributory negligence. Upon the evidence adduced below, it would seem to be for the jury, and not for the Court, to resolve the discrepancies and dispose of the contradictions in the testimony. *Ward v. Smith,* 223 N.C. 141, 25 S.E. 2d 463; *Edwards v. Junior Order,* 220 N.C. 41, 16 S.E. 2d 466; *Childress v.*

McCRAW *v.* MILLS, INC.

*Lawrence,* 220 N.C. 195, 16 S.E. 2d 842. The evidence is susceptible of supporting dual, conflicting theories. See *Maddox v. Brown, supra* (232 N.C. 542, pp. 544 and 545).

We refrain from discussing the aspects of the evidence adduced at the last hearing which the plaintiff contends supports inferences tending to strengthen her case. Such matters we leave for the forum below.

We have examined plaintiff's assignment of error challenging a portion of the testimony of the witness George Wallace, elicited on cross-examination, upon the theory that the witness was thereby allowed to invade the province of the jury by expressing a theoretical opinion about a matter of simple, physical fact. The witness was asked on cross-examination: "And (the bus) pulled over enough to get around it (the motorcycle) if it (the motorcycle) had gone straight ahead?" The witness answered, "Yes, sir." On cross-examination much latitude is given counsel in testing for consistency and plausibility matters related by a witness on direct examination. *Bank v. Motor Co.,* 216 N.C. 432, 5 S.E. 2d 318. See also *Perry v. Jackson,* 88 N.C. 103. Besides, the answer here given may be treated, we think, as a "shorthand statement of fact,"—the statement of a composite fact. *Myers v. Utilities Co.,* 208 N.C. 293, p. 295, 180 S.E. 694. The exception is untenable.

However, for error in allowing the motion for nonsuit, the judgment below is

Reversed.