A. C. WARD, T/A VICTORY CAB COMPANY, v. MARTIN WESLEY CRUSE
AND AKERS MOTOR LINES, INC.

(Filed 5 November, 1952.)

**1. Trial § 22b—**

Only so much of defendant's evidence as is favorable to plaintiff or tends to explain or make clear plaintiff's evidence may be considered upon defendant's motion to nonsuit, and evidence offered by defendant in conflict with or contradictory to plaintiff's evidence may not be considered.

**2. Automobiles §§ 8i, 14—**

Where the driver of a preceding vehicle traveling in the same direction gives a clear signal of his intention to turn left into an intersecting road and leaves sufficient space to his right to permit the overtaking vehicle to pass in safety, the provisions of G.S. 20-149 (a) do not apply, and the overtaking vehicle may pass to the right of the overtaken vehicle, but this rule does not relieve the driver of the overtaking vehicle of the duty of observing other pertinent statutes, including the duty to give audible warning of his intention to pass as required by G.S. 20-149 (b).

**3. Automobiles §§ 18h (2), 18h (3)—Evidence held for jury on issues of negligence and contributory negligence in accident at intersection.**

Plaintiff's evidence tended to show that he was driving his taxi in a westerly direction on a highway, intending to turn left at an intersecting road, that he gave a left turn signal some 200 or 250 feet before the intersection, but discontinued his left-turn signal some 100 feet before reaching the intersection and was driving along the center of the highway straddling the center line without having completely cleared his right-hand traffic lane, that he looked back to see whether it was safe for him to turn to his right to pick up his prospective passengers whom he had seen on the right side of the highway, when he saw defendant's truck for the first time with its bumper practically against his bumper, and that the collision ensued almost immediately as the truck attempted to pass the taxi to its right. *Held:* Defendant's motion to nonsuit on the issues of negligence and contributory negligence should have been refused, since whether defendant was guilty of negligence is for the determination of the jury upon correct instructions of the court, and plaintiff's own evidence does not warrant the conclusion, as a matter of law, that plaintiff's conduct was a contributing cause of the collision.

**4. Appeal and Error § 11—**

The cost of preparing the transcription of the record is a part of the costs in the Supreme Court, and the judge of the Superior Court upon the subsequent trial is without jurisdiction to entertain motion for the recovery of such costs. G.S. 6-33.

**5. Same—**

"The cost of making up the transcription on appeal" refers only to the cost of transcribing the judgment roll and case on appeal which the clerk of the Superior Court is required to certify to the clerk of the Supreme Court, G.S. 1-284, and an amount expended for a transcription of the testimony preliminary to preparing and serving appellant's case on appeal constitutes no part of this cost. G.S. 6-34.

APPEAL by plaintiff from *Clement, J.,* March Term, 1952, RANDOLPH. Reversed.

Civil action to recover compensation for damages to plaintiff's taxicab resulting from a collision with defendant's tractor-trailer.

A highway (49 and 64) extending westwardly out of Asheboro is locally known as the by-pass. Another highway which intersects this road is locally known as the Whitley road. Hereafter they will be referred to by their local names.

On 13 October 1950, plaintiff was operating his taxi westwardly on the by-pass with the intention of turning left on the Whitley road to "pick up" some passengers who had called for a taxi. Defendant Cruse, operating the corporate defendant's tractor-trailer, was traveling in the same direction some distance to the rear. When plaintiff got within 200 or 250 feet of the intersection he gave a left-turn signal. What thereafter oc-

curred, stated in the light most favorable to plaintiff, is best described in the language of the plaintiff. He testified:

"I was going down to Whitley's. I came down 200 or 250 feet and I gave a left-hand signal and the boys were up on my right . . . they whistled and I withdrew my signal and coasted along in the middle of the highway straddle of the white line, and I saw the colored boys on my right . . . I turned and looked through my mirror to see if it was clear to turn in, and when I did, this truck—his bumper was right up over my bumper behind me. He was more to my right . . . I looked back over my shoulder and saw the truck right in behind me with his bumper over mine. I did my best to try to get out. I kept going and he overtook me right here. When he overtook me, he drug his wheels and tried to stop, but he didn't. He hit my right; his front bumper hit my back panel. His bumper scraped me all the way from the back to the front . . . My car was in the center of the intersection when a tractor-trailer operated by Mr. Cruse hit me . . . The truck did not at any time give any warning that he was attempting to pass me . . . I was knocked down the road approximately 30 or 40 feet . . . He stopped in the intersection . . . When I saw the boys I looked back over my shoulder to see if everything was clear to turn to my right, and the bumper was right over mine and I didn't have time to do anything. All I could do was try to get out of the way . . . My car, with respect to the middle of the road, was on the right-hand side when I withdrew my signal. I pulled up to the middle of the road, and I was looking to my left, and I looked back to my right and saw the boys. I was straddle of the middle line, probably a hundred feet back from the center of the road . . . When I first saw the Akers truck, his front bumper was right over my rear bumper. After that it traveled 20 or 30 feet before the collision. His bumper was practically against my bumper . . . I hadn't seen it at all up till then. When I first saw the truck it was 20 or 30 feet from the intersection. My car was straddle of the center line at that time . . . I did not cut my car directly toward the boys and in front of that truck of the defendant in this case."

Defendants offered evidence which sharply contradicts the testimony of plaintiff.

At the conclusion of the testimony the court, on motion of defendants, entered judgment as in case of nonsuit. Plaintiff excepted and appealed.

*Ottway Burton for plaintiff appellant.*
*H. M. Robbins for defendant appellees.*

BARNHILL, J. The record on the former appeal, *Ward v. Cruse,* 234 N.C. 388, 67 S.E. 2d 257, disclosed that plaintiff testified on the first trial that when he reached the intersection and after seeing his prospective

passengers some distance up the Whitley road to his right, he swerved his vehicle back to his right to enter the north branch of the Whitley road. He did not so testify in the court below. While there was testimony that plaintiff gave a left-turn signal and drove his vehicle completely on the left, or south, side of the by-pass and then cut back sharply to his right to enter the north, or right-hand, branch of the Whitley road, this testimony came from witnesses for the defendant. And it is axiomatic that evidence offered by the defendant which is in conflict with or contradicts the testimony offered by the plaintiff is not to be weighed in the balance in the consideration of an exception to a judgment of involuntary nonsuit. *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Rice v. Lumberton,* 235 N.C. 227.

Only so much of the defendants' evidence as is favorable to the plaintiff or tends to explain or make clear that which has been offered by the plaintiff may be considered in determining whether the evidence, considered in the light most favorable to the plaintiff, makes out a case for the jury. *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740; *Atkins v. Transportation Co., supra; Rice v. Lumber Co., supra.*

G.S. 20-149 (a) requires the driver of a vehicle, in overtaking and passing another vehicle proceeding in the same direction, to pass at least two feet to the left thereof. In discussing this statute in *Maddox v. Brown,* 232 N.C. 542, 61 S.E. 2d 613, we said:

". . . notwithstanding the provisions of this statute, a motorist may, in the exercise of ordinary care, pass another vehicle, going in the same direction, on the right of the overtaken vehicle when the driver of that vehicle has given a clear signal of his intention to make a left turn and has left sufficient space to the right to permit the overtaking vehicle to pass in safety."

While we adhere to this rule, it is not controlling here, as a matter of law, so as to warrant or require a judgment of nonsuit.

Considering the evidence in the light most favorable to the plaintiff, he discontinued his left-turn signal some 150 feet before he reached the intersection and was driving along the middle of the highway, straddling the center line. He had not completely cleared the right-hand lane of traffic. Instead, that lane was partly blocked by his taxi when the individual defendant approached from the rear and undertook to pass him on his right-hand side.

Furthermore, plaintiff's evidence tends to show that Cruse undertook to pass plaintiff without first giving audible warning of his intention so to do as required by G.S. 20-149 (b). The rule stated in the *Maddox case* was not intended to and does not relieve a motorist of the duty of observing other pertinent provisions of our statute regulating the operation of motor vehicles upon the public highways of the State.

Therefore, whether the facts and circumstances surrounding the collision, as they are found to be from the conflicting testimony offered, establishes actionable negligence on the part of Cruse is a question for the jury to decide under appropriate instructions by the court, applying the rule stated in the *Maddox case* and the provisions of the pertinent statutory traffic regulations.   *Conley v. Pearce-Young-Angel Co., supra.*

The plaintiff's evidence is not such as to warrant the conclusion, as a matter of law, that his conduct was a contributing cause of the collision and the resulting damage to his taxi.   This too is a question for the jury. *Conley v. Pearce-Young-Angel Co., supra; Atkins v. Transportation Co., supra; Hobbs v. Drewer,* 226 N.C. 146, 37 S.E. 2d 121; *Fowler v. Atlantic Co.,* 234 N.C. 542, 67 S.E. 2d 496; *McIntyre v. Elevator Co.,* 230 N.C. 539, 54 S.E. 2d 45.

In preparation for his appeal from the judgment entered at the first trial, plaintiff paid the official court reporter $104.46 for a transcript of the testimony offered at that trial.   He moved in the court below that he have and recover of defendants said sum as a part of the costs recoverable by him under the provisions of G.S. 6-33, 34.   The motion was denied and plaintiff excepted.

G.S. 6-34 provides that: "When an appeal is taken from the superior court to the supreme court, the clerk of the superior court, when he sends up the transcript, shall send therewith an itemized statement of the costs of making up the transcript on appeal, and the cost thereof shall be taxed as a part of the costs of the supreme court."

Under this statute the cost of preparing the transcript of the record becomes a part of the cost incurred in this Court and is taxable as such. There has been no motion to retax the costs assessed by the clerk of this Court and the judge of the superior court was without jurisdiction to entertain the motion filed in the court below.   *Bailey v. Hayman,* 222 N.C. 58, 22 S.E. 2d 6; *Ebert v. Disher,* 216 N.C. 546, 5 S.E. 2d 716.

"If in any court of appeal there is judgment for a new trial, or for a new jury . . . the costs shall be in the discretion of the appellate court." G.S. 6-33.

In this connection it is well to note that the decision in *Dobson v. R. R.,* 133 N.C. 624, was rendered prior to the enactment of ch. 456, P.L. 1905, which is now codified as G.S. 6-34.

Even if we waive the questions of jurisdiction and procedure, we must conclude that plaintiff's exception is without merit.   "The cost of making up the transcript on appeal," G.S. 6-34, has reference to and includes only the cost of transcribing the judgment roll and case on appeal, as finally agreed or settled, which the clerk of the Superior Court is required to certify to this Court.   G.S. 1-284.   The amount expended for a transcript of the testimony preliminary to preparing and serving appellant's pro-

posed case on appeal constitutes no part of this cost. Hence the order entered denying the motion is affirmed.

For the reasons stated the judgment entered in the court below dismissing the action as in case of nonsuit is

Reversed.