ODELL WEAVIL, ADMINISTRATOR OF DENNIS FREEMONT WEAVIL, DEC'D.,
v. C. W. MYERS TRADING POST, INCORPORATED.

(Filed 12 December, 1956.)

**1. Automobiles § 10—**

A motorist is required, in the exercise of reasonable care, to keep a proper lookout in his direction of travel, and while he is not required to anticipate that a truck will be standing on the highway without flares or other warning signs of danger prescribed by statute, he remains under duty to proceed as a reasonably prudent person would under the circumstances to avoid collision with the rear of such truck.

**2. Automobiles § 9—**

A red light is recognized by common usage as a method of giving warning of danger during hours of darkness, and a driver is required in the exercise of due care, upon seeing a red light, to heed its warning and reduce his speed.

**3. Automobiles § 8—Whether red flashing lights were turn-signal lights held for jury upon the evidence in this case.**

The evidence disclosed that the main lighting fuse in defendant's truck blew out, that the driver stopped the truck and immediately knocked on the flashing red signal lights on the front and rear of the left of the truck, which lights were round without signal arrows. There was no evidence that the signal device was of a type approved by the Department of Motor Vehicles. G.S. 20-154. *Held:* Plaintiff's contention that the truck gave the statutory left-turn signal is not supported by the evidence, and the conflicting contentions of the parties upon the evidence as to whether the red signal lights flashing on and off were sufficient to indicate a left turn or merely indicated the presence of the vehicle on the highway at that particular point, were properly submitted to the jury in the charge of the court.

**4. Automobiles § 14—Right of driver of following vehicle to pass to the right of a vehicle in front of him on highway.**

Notwithstanding the provisions of G.S. 20-149, a following vehicle may pass a vehicle in front of it on the highway on its right side when the driver of the front vehicle has given a clear signal of his intention to make a left turn and has left sufficient space to the right to permit the overtaking vehicle to pass in safety, and the circumstances are such that ordinary care dictates such course in order to avoid a collision. But this rule does not apply when the driver of the front vehicle has stopped and given no clear signal of his intention to make a left turn, but merely has red lights flashing on and off on the left rear and left front of his vehicle, in which instance the driver of the overtaking vehicle, in the exercise of due care, should approach with his automobile under control and reduce his speed or stop, if necessary, to avoid injury.

**5. Automobiles § 46—**

The charge of the court upon the evidence in this case as to whether flashing signal lights on the left rear and left front of defendant's stationary truck were left-turn signals or merely warning signals of the presence

of the truck on the highway, together with the law applicable to the duty of a motorist approaching from the rear of such vehicle, *is held* without error.

**6. Automobiles § 10—**

The charge of the court on the rule that the inability of a motorist, traveling within the statutory maximum speed, to stop before hitting a stationary vehicle without lights ahead of him on the highway, is not contributory negligence *per se, is held* without error, construing the charge contextually.   G.S. 120-141(e).

**7. Appeal and Error § 19—**

An assignment of error must present a single question of law for consideration by the Court.

**8. Appeal and Error § 42—**

A charge must be read as a composite whole and not disjointedly.

Johnson, J., not sitting.

Appeal by plaintiff from *Patton, Special Judge,* June Term 1956 of Forsyth.

Civil action by administrator to recover damages for an alleged wrongful death.

The jury found for its verdict that plaintiff's intestate was killed by the actionable negligence of the defendant, and that plaintiff's intestate by his own negligence contributed to his death.   Judgment was rendered in accordance with the verdict.

From the judgment, plaintiff excepts and appeals.

*Deal, Hutchins & Minor for Plaintiff, Appellant.*
*Jordan & Wright for Defendant, Appellee.*

Parker, J.   This is the second time this case has been before the Court.   The first appeal was from a judgment sustaining a demurrer to the complaint.   The judgment was reversed.   *Weavil v. Myers,* 243 N.C. 386, 90 S.E. 2d 733.

The plaintiff has appealed a second time, and his assignments of error, except formal ones, are to the charge of the court alone.

About 7:00 p.m. on 26 November 1954, a dark night, Zachary Battle, an employee of defendant and on his employer's business, with Eugene Davis riding with him, was driving to Winston-Salem on State Highway No. 311 at a speed of about 35 miles per hour, a truck of the defendant loaded with lumber about 10 feet high.   The truck was a 1949 Reo with a 20 feet bed on it, steel trimmings, and a flat wooden floor.   According to a witness for the plaintiff, the load of lumber extended 5 feet or more behind and beyond the body of the truck.   Neither a red flag nor a red

light was displayed at the end of the load. The end of the load had no reflectors. Zachary Battle and Eugene Davis were the only eye witnesses to the collision, except plaintiff's intestate. Battle and Davis were examined adversely by plaintiff before trial, and at the trial plaintiff introduced their examinations in evidence. The head lights, tail lights and clearance lights worked on the same fuse. As Battle was driving along the road with his head lights, tail lights and clearance lights on, the main fuse blew out, and his head lights, tail lights and clearance lights went out. Battle stopped the truck in about two of its lengths. When the truck stopped, Battle saw no lights of a car approaching from the rear or meeting him from the front.

The truck had a signal light on each front fender, and two signal lights on the rear of the truck, one on each side. "The signal lights were on the frame of the truck, right on the side . . . they were flush with the back end of the steel bed." The signal lights were on a different fuse from the head lights, tail lights and clearance lights. The signal lights could only be turned on by knocking them on, and could only be turned on one side at the same time.

When the truck stopped, Battle immediately knocked on his left-turn signal lights, because he did not know where his truck was on the highway, but did know the left-hand side of it was farther on the highway than its right-hand side. He also testified he knocked on the left-turn signal lights, so people coming could have some light. He further testified he did not intend to turn to the left with his stopped truck, although a left-turn signal indicates a left turn: "that is what it is supposed to be." Before the truck stopped, Eugene Davis jumped off it with a flare, ran down the highway in front of it about 200 feet, and placed the flare on the highway. As he started back to the truck the collision occurred. Davis testified that before the collision occurred he saw the truck's left-turn signals flashing for a left turn. Battle got a flare, and, as he was getting out of the truck, he saw a flash of light in his rear view mirror, heard something "rip" that sounded like brakes, and an automobile driven by plaintiff's intestate crashed into and under the rear of the truck. That was about a minute after the truck's head lights, tail lights and clearance lights went out. No car was approaching the stopped truck from its front at the time of the collision. A piece of lumber from the rear end of the truck penetrated the windshield of the automobile driven by plaintiff's intestate, and practically decapitated him, causing almost instant death. Plaintiff's intestate had the lights of his automobile on.

State Highway Patrolmen E. W. Mabe, the sole witness for the defendant, examined the lighting system of the truck at the scene shortly after the collision. He testified: "I saw a light which was located on the left front fender of the truck; at the time I arrived it was function-

ing. The light located on the left front fender of the truck was a 4-inch-in-diameter light, round, with an amber plastic face on the front, in the direction of the front of the truck, and a red plastic lens that was facing the rear of the truck. I saw no arrow or other directional device whatsoever on that light. It was just a round red light when viewed from the rear, which flashed on and off . . . The signal lights in the rear of the truck on the side of the truck did not have any arrow pointing one way or the other; but they did indicate, when they flashed, a turn on the side the light was on, just like the front one indicated. If the left one was on, it indicated a left turn, and if the right one was on, it indicated a right turn."

Patrolman Mabe further testified substantially as follows: The concrete pavement of the highway where the truck stopped was 22 feet wide. The truck stopped on its right-hand side of the pavement with the left rear of the truck about a foot and a half to the right of the center line on the highway. There were three feet of driveable space on the right shoulder beside the stopped truck. South of the stopped truck and behind it the highway was straight and approximately level for about 800 to 1,000 feet, and to the North of the truck it was straight and about level between 350 to 400 feet. Single wheel skid marks for a distance of 39 feet led up to the rear wheels and front wheels of plaintiff's intestate's automobile at the scene of collision.

One of the allegations of negligence in the complaint is that Zachary Battle, when he stopped the truck, turned on his left-turn signals indicating his intention to make a left turn from the highway, though he had no intention of doing so, making it dangerous for plaintiff's intestate to pass the truck on its left, and forcing plaintiff's intestate to turn back on his right side of the highway, thus setting a trap for plaintiff's intestate from which it was impossible for him to extricate himself, which negligence was a proximate cause of his death. The answer alleges that, when Battle stopped his truck, he turned on the left-turn electrical signal lights on the truck; and the answer in alleging further defenses states, when the truck stopped Battle switched on the left-turn signal lights, thereby causing a flashing red light to be emitted from both the left-hand rear and left-hand front portions of the stopped truck.

Plaintiff's first assignment of error is based upon his Exceptions 1, 2, 3, 8 and 9. All these Exceptions have reference to the charge in respect to the signal lights on the stopped truck. Exception 1 is to the part of the charge in quotation marks that the defendant has offered evidence tending to show that, as soon as the truck stopped, Battle turned on the signal lights, "that it was not a signal light indicating a left-hand turn, but was only a flashing light."

The court charged as follows:

"(Now, there has been argument in this case and evidence tending to show that Battle, the operator of defendant's vehicle, when he stopped, turned on signals that were not operated by the main lighting mechanics of the vehicle, the plaintiff contending that he turned on a left-hand turn, a directional signal; the defendant contending that he only turned on a flashing light which would notify vehicles coming from both ways that he was there).

"Now, if you find from this evidence that the signal which he turned on was a directional signal, indicating a left-hand turn, then that would have been an indication to a person or operator of a vehicle coming from behind that he intended to turn left, and such person coming from behind had a right to rely upon that action, that he was intending to turn from a direct line to the left.

"(On the other hand, if you find that it was not a directional signal, indicating a left-hand turn, but was only a flashing signal, indicating the presence of the vehicle on the highway at that particular point, then a person coming from behind would have been required, under the law, to bring his vehicle under control and stop, or, in the exercise of ordinary care, to pass to the left and go on)."

Plaintiff's Exception 2 is to the first part of this excerpt from the charge in parentheses: his Exception 3 is to the last part in parentheses.

Plaintiff's Exception 8 is to the following part of the charge in parentheses, which immediately followed a part of the charge that gave plaintiff's intestate the benefit of the principle of a man confronted with a sudden emergency:

"And if you should find from this evidence that the vehicle of the defendant was sitting on the main-traveled portion of the highway on the right-hand side of the center line, with a directional signal indicating a left-hand turn, then, under the law, the deceased, Weavil, would have not been required to turn to the left and undertake to pass on the left, with the truck indicating a left-hand turn. (But, if you should find that the light on the defendant's truck—if you find there was one—was only a flashing signal, indicating its presence in the highway, and not a signal indicating a left-hand turn, then he would have been required, in the exercise of due care, to bring his vehicle under control and stop and avoid colliding with the defendant's truck)."

Plaintiff's Exception 9 is to this part of the charge in parentheses:

"Now, in Issue 2, if the defendant has satisfied you, from the evidence and by its greater weight, that Dennis Freemont Weavil, in the operation of his vehicle, was negligent in that he failed to keep a proper lookout in the direction in which he was traveling, or failed to keep his vehicle under reasonable control; or operated it at a speed greater than was reasonable and prudent under the circumstances; or if he saw the vehicle of the defendant in front of him and failed to bring his vehicle under control and stop, if necessary, to avoid colliding; (or if the defendant's vehicle was emitting a flashing signal, indicating that it was there, rather than a left-hand turn, and he failed either to stop or to pass at least two feet on the left-hand side of the defendant's vehicle)."

On a dark night defendant's truck, due to the head lights, tail lights and clearance lights suddenly going out by reason of a blown fuse, was stopped on its right-hand side of the 22 feet wide concrete pavement of the highway with its left rear about a foot and a half to the right of the center line on the highway. When these lights went out, there were no lights of a car approaching or coming from behind. Immediately upon the stopping of the truck, the driver knocked on its left-turn signals. The truck was then standing on its right side of the highway with its left-turn signal lights flashing red on and off. These signal lights had no arrow or other directional device. The highway behind the truck was straight and approximately level for about 800 to 1,000 feet. Plaintiff's intestate, driving his automobile, approached the stopped truck from the rear. His lights were on, and he was meeting no vehicle.

Plaintiff's intestate was not required to foresee or anticipate that a truck would be stopped and left standing on the traveled portion of the highway ahead of him, partially blocking it, without the flares or other warning signs of danger prescribed by our statutes, but this did not relieve him of the duty of exercising reasonable care, of keeping a proper lookout, and of proceeding as a reasonably prudent person would under the circumstances, to avoid collision with the rear end of a motor vehicle stopped or standing on the highway ahead. *Dawson v. Transportation Co.,* 230 N.C. 36, 51 S.E. 2d 921; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251.

"While the plaintiff had the right to assume that other motorists would not obstruct the highway unlawfully, and would show the statutory lights if they stopped, he could not for that reason omit any of the care that the law demanded of him." *Steele v. Fuller,* 104 Vt. 303, 158 A. 666.

Motorists on the public highways have equal and reciprocal rights to the use thereof. The legal standard of care required of them is unvarying and alike at all times—that of a reasonably prudent man

under the circumstances. *Kellogg v. Thomas,* 244 N.C. 722, 94 S.E. 2d 903; *Henderson v. Henderson,* 239 N.C. 487, 80 S.E. 2d 383.

We said in *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330: "It is the duty of the driver of a motor vehicle not merely *to look* but *to keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

There is nothing in the evidence to show that plaintiff's intestate, as he approached the truck standing in the highway ahead, could not see all that is ever visible on an automobile ahead stopped or standing in such a condition on a dark night. As he approached, on the left rear of the truck and on its left fender were red signal lights flashing on and off. A red light is recognized by common usage as a method of giving warning of danger during hours of darkness, for instance of excavations in the highway, of road barricades, of an automobile standing on the highway, or of other objects or conditions on the highway, that constitute a menace to travellers, and a driver on seeing a red light ahead in the highway is required in the exercise of due care to heed its warning. *James v. White Truck & Transfer Co.,* 1 Cal. App. 2d 37, 36 P. 2d 401; *Martin v. Puget Sound Electric Ry.,* 136 Wash. 663, 241 P. 360; Blashfield's Cyclopedia of Auto. Law and Practice, Per. Ed., Vol. 2A, sec. 1225.

In *James v. White Truck & Transfer Co., supra,* the Court said: "Appellants suggest that a motorist observing a red light ahead would assume or believe that it was attached to a moving vehicle, and therefore entitled to some other warning of a stationary object. We cannot give assent to this contention, nor approval to the doctrine involved in the suggestion. Whether the red light is on a swift or slow moving vehicle, or on a stationary obstruction, from the time it is first observed, it conveys the information of danger and the observer is bound to heed its warning."

In *Martin v. Puget Sound Electric Ry., supra,* the Court said: "It is not the rule that a driver of an automobile must stop his automobile or check his speed every time he sees a red light on the highway, at risk of being chargeable with negligence. Whether he is so negligent by not so doing must always depend upon the circumstances. While a red light is a signal of danger, it is also a signal that usually points out the place of danger. If it is at one side of the highway, an approaching driver has the right to assume that it marks the limit of danger, and that the other side of the highway is clear. It is only when the light blocks the highway, or is so placed as to indicate that the passage is so narrowed as not to afford a safe passage within the speed limit, that he is chargeable with negligence if he does not approach with his vehicle under control."

In the instant case the plaintiff contended that the driver of the truck, when he stopped, knocked on left-turn signal lights indicating a left-hand turn of the truck. The defendant contended that the signal lights did not indicate a left-hand turn, but they were only flashing lights. It is plain from the court's charge that such was the theory of the trial. It seems that both contentions find support in the reasonable inferences to be drawn from the evidence. The opinions of the witnesses were inferences they drew from the evidence. There is no evidence, however, that the mechanical or electrical signal device on defendant's truck was a device of a type approved by the Department of Motor Vehicles for use in giving the signals for starting, stopping, or turning as prescribed by G.S. 20-154. *Banks v. Shepard,* 230 N.C. 86, 52 S.E. 2d 215. Plaintiff's contention in his brief that the truck gave a *statutory* left-turn signal is not supported by the evidence. Whether, according to the evidence, the red signal lights on the truck flashing on and off were sufficient to indicate a left turn of the truck was for the jury to decide.

It was the duty of plaintiff's intestate to keep a proper lookout ahead in the direction he was travelling, to watch out for signals from the driver of any vehicle ahead to turn, stop or start, to give due regard to them, and in the exercise of ordinary care be prepared to avoid danger in case of any movement of the vehicle ahead which is properly signaled. *Cohen v. Ramey,* 201 Ark. 713, 147 S.W. 2d 338; *Wright v. Clausen,* 253 Ky. 498, 69 S.W. 2d 1062, 104 A.L.R. 480; *Cook v. Gillespie,* 259 Ky. 281, 82 S.W. 2d 347; *Branstetter v. Gerdeman,* 364 Mo. 1230, 274 S.W. 2d 240; *Evans v. Alexander,* 168 Pa. Super. 481, 78 A. 2d 879; 60 C.J.S., Motor Vehicles, p. 747; Blashfield, Cyclopedia of Automobile Law and Practice, Per. Ed. Vol. 2, sec. 1123. The driver of the automobile behind in failing to observe plain turning or stopping signals given by the motorist ahead may be guilty of contributory negligence in the event of a collision and injury to himself. *Lawson v. Darter,* 157 Va. 284, 160 S.E. 74.

The truck in this case was standing still, not moving forward. G.S. 20-149 prescribes that a motorist overtaking another vehicle proceeding in the same direction shall pass at least two feet to the left thereof. This Court said in *Maddox v. Brown,* 232 N.C. 542, 61 S.E. 2d 613—quoted in *Ward v. Cruse,* 236 N.C. 400, 72 S.E. 2d 835: ". . . notwithstanding the provisions of this statute (G.S. 20-149), a motorist may, in the exercise of ordinary care, pass another vehicle, going in the same direction, on the right of the overtaken vehicle when the driver of that vehicle has given a clear signal of his intention to make a left turn and has left sufficient space to the right to permit the overtaking vehicle to pass in safety." The courts generally hold a motorist on the road is bound to exercise ordinary care for his own safety under all the circumstances, and that the so-called law of the road, established by common

law or statute, is not an inflexible rule, the violation of which will necessarily render an offender guilty of negligence or contributory negligence, but, if ordinary care so dictates under the circumstances, he may, in order to avoid a collision, turn in violation of the ordinary rule of the road. *Ledbetter v. English,* 166 N.C. 125, 81 S.E. 1066; *Cooke v. Jerome,* 172 N.C. 626, 90 S.E. 767; Anno. 24 A.L.R. pp. 1304 *et seq.,* where the cases are cited.

The rule stated in *Maddox v. Brown, supra, Ledbetter v. English, supra,* and *Cooke v. Jerome, supra,* does not fit the exact facts here, but it would seem to lend support to the principle that a motorist may, in the exercise of ordinary care, pass or attempt to pass another vehicle headed in the same direction, but standing still on the highway, on the right, when the driver of the vehicle ahead has given a clear signal of his intention to make a left turn and by such signal the motorist behind had reasonable grounds to believe, and believed, that the safe way to do was to pass or attempt to pass to the right, and it was unsafe to attempt to pass by going to the left, and there was sufficient space to the right to pass in safety. Under such circumstances it would not be negligence or contributory negligence upon the part of the motorist to pass or attempt to pass on the right. But where the driver of the stopped truck has given no clear signal of his intention to make a left turn, but the truck standing on the right of the highway merely has on the left rear and left fender a red light flashing on and off, it would seem that the driver of an automobile approaching at night from the rear, in the exercise of ordinary care, is bound to approach with his automobile under control, so as to reduce his speed or stop, if necessary, to avoid injury. See charge of trial court held without error in *Cooke v. Jerome, supra.*

Here plaintiff's intestate turned neither to the right nor to the left, but drove straight ahead into and under the rear of the truck stopped on its right side of the highway. It is attempted to justify this by showing it was necessary, owing to the conduct of the driver of the truck in turning on left-turn signals. As the evidence is conflicting as to whether the signals were clear left-turn directional signals, or merely a red light flashing on and off to give notice of the truck stopped in the highway, the court properly submitted the matter to the jury. We do not discover any error in the part of the charge embraced by plaintiff's assignment of error No. 1. The court in its charge as to the first issue clearly and correctly declared and explained the law arising on the evidence in the case as to the signal lights favorably to plaintiff. It would lengthen this opinion too much to set it out, and no exception is taken to that part of the charge. We think the charge as to the lights on the left side of the stopped truck presented the controversy to the jury

clearly and fairly, and gave the plaintiff all, if not more, than he was entitled to.

Plaintiff's assignment of error No. 2 is based upon his Exceptions 4, 5, 6 and 10. Exception 4 is to the part of the charge as to passing an automobile at least two feet to the left thereof, as required in certain cases by G.S. 20-149. Exceptions 5 and 6 are to the part of the charge as to stopping an automobile within the radius of the lights thereof, which inability to stop for one operating his automobile within the statutory maximum speed limits shall not be considered contributory negligence *per se*, as set forth in G.S. 20-141(e). Exception 10 is to the failure of the court in its charge to declare the law upon the evidence that defendant's driver made an abrupt stop without signal or warning thereof, its failure to declare the law upon the evidence that defendant's driver had room to pull off the hard-surfaced part of the highway on the dirt shoulder out of the way of oncoming traffic, etc. "An assignment of error must present a single question of law for consideration by the Court." *Dobias v. White,* 240 N.C. 680, 83 S.E. 2d 785. Assignment of error No. 2 presents several different questions of law for consideration, and is broadside in its nature. However, the plaintiff in his brief in discussing this assignment of error only refers to the part of the charge, to which he has excepted, which refers to G.S. 20-141(e). Yet the plaintiff admits in his brief that the court in its charge, immediately after the part of the charge which is the basis of his Exception 6, qualified this part of the charge excepted to by his Exceptions 5 and 6 by a statement "of the correct rule."

A charge must be read as a composite whole and not disjointedly. *Vincent v. Woody,* 238 N.C. 118, 76 S.E. 2d 356; *Milling Co. v. Highway Com.,* 190 N.C. 692, 697, 130 S.E. 724. When the charge in this case is so read, prejudicial error sufficient to overthrow the trial below is not shown. All the assignments of error have been considered, and are overruled.

No error.

JOHNSON, J., not sitting.