## McEWEN FUNERAL SERVICE, INC. v. CHARLOTTE CITY COACH LINES, INC.

(Filed 9 April, 1958)

**1. Evidence § 2:    Automobiles § 17—**

The courts will not take judicial notice of municipal ordinances, and therefore when municipal ordinances regulating the right of way at intersections are pleaded only by code number and not introduced in evidence, the rights of the parties will be determined in accordance with applicable State statutes and the rule of the reasonably prudent man, notwithstanding the ordinances are set out in the briefs.

**2. Automobiles § 7—**

Fundamental to the right to operate any motor vehicle is the rule of the prudent man declared in G.S. 20-140, requiring a motorist to operate his vehicle with due care and circumspection so as not to endanger others.

**3. Automobiles § 17—**

G.S. 20-158(c), prescribing the right of way at intersections controlled by traffic control lights, applies only to such lights outside of towns and cities, but cities are not denied the authority to regulate the movement of traffic at street intersections. G.S. 20-158(b).

**4. Automobiles § 6—**

The violation of statutory rules of the road designed to provide for human safety is negligence *per se* unless the statute provides that its violation shall not constitute negligence as a matter of law.

**5. Automobiles § 17—**

Even though the municipal ordinance governing the use of intersections controlled by traffic control signals is not introduced in evidence, the use of traffic lights at intersections is general and the meaning of the lights well understood, and such signals will be obeyed by a reasonably prudent person; the red light gives warning of danger, and a green light or "go" signal is not a command to go, but is a qualified permission to proceed lawfully and carefully in the direction indicated.

**6. Same—**

The statute giving ambulances on emergency duty the right of way at intersections does not relieve the operator of a private or public ambulance of the duty to exercise due care, and does not require a motorist to yield such ambulance the right of way until the motorist hears and comprehends its siren or warning sound, or should have heard and understood its meaning in the exercise of the care of a reasonably prudent person. G.S. 20-156(b), G.S. 20-125(b).

**7. Automobiles § 41g— Where evidence does not show that driver heard or should have heard warning siren, it fails to show negligence in failing to yield right of way to ambulance.**

The evidence tended to show that an ambulance on emergency duty, with its siren sounding at "peak" was traveling north along a four-lane street, and entered an intersection with another, more heavily traveled,

FUNERAL SERVICE *v.* COACH LINES.

four-lane street, against the red light, that a car traveling east and a cab traveling west along the intersecting street stopped, but that defendant's bus, traveling west in the northern lane of the intersecting street with its view obstructed by the stationary cab, etc., proceeded into the intersection with the green light and struck the right side of the ambulance in the northeastern part of the intersection. *Held:* In the absence of evidence that the operator of the bus heard or should have heard and comprehended the warning of the siren, the evidence fails to show negligence on the part of the operator of the bus. The fact that the other vehicles along the intersecting street had stopped, notwithstanding that they were facing the green light, is not evidence that the bus driver heard or should have heard the warning siren when it is not made to appear that such other vehicles stopped because of the warning siren.

PARKER, J., concurs in result.

JOHNSON, J., dissenting.

BOBBITT, J., concurs in dissent.

APPEAL by plaintiff from *Pless, J.,* November 18, 1957, Term of MECKLENBURG.

In the forenoon of 19 November 1956 there was a collision at the intersection of McDowell and Fourth Streets in Charlotte between an ambulance owned by plaintiff and a bus owned by defendant. Plaintiff seeks to recover for the damages done to its vehicle. It alleges Charlotte had adopted and there was in force at the time of the collision an ordinance designated as ch. 2, art. 11, sec. 17(a) which it pleaded by title but without stating its contents. It alleged that the collision was due to defendant's negligent failure to yield the right of way as required by GS 20-156(b), GS 20-155(b), and operation prohibited by GS 20-140.

Defendant admitted the collision and the adoption of the ordinance referred to in the complaint. It denied the asserted negligence and pleaded contributory negligence by plaintiff in entering an intersection where the view was obstructed, operation in a careless and reckless manner at a high and illegal rate of speed and in disregard of the warning given by a red traffic light at the intersection. It avers the violation of the provisions of GS 20-155(a), GS 20-156, and sec. 24(c) of the code of Charlotte. The provisions of the ordinances pleaded are not set out.

At the conclusion of plaintiff's evidence, defendant moved for nonsuit. The motion was allowed, and plaintiff appealed.

*McDougle, Ervin, Horack & Snepp, for plaintiff, appellant.*
*Lassiter, Moore and Van Allen, for defendant, appellee.*

RODMAN, J.     The evidence, when viewed in the most favorable light to plaintiff, tends to establish these facts:

Fourth Street is a very heavily traveled street. It is a major traffic artery of the City of Charlotte. It is a four-lane highway, that is, two lanes move in an easterly direction and two lanes in a westerly direction. No parking is permitted on this street. At and prior to the collision, defendant's bus was traveling west on Fourth Street.

McDowell Street runs north-south. Traffic on it is likewise heavy, but not as heavy as on Fourth Street. It is also a four-lane street.

A traffic light with red and green lenses to regulate the flow of traffic across the intersection was in operation at the time of the collision. At the southeastern intersection was a grill which obstructed the vision down East Fourth Street of those traveling north on McDowell and likewise obstructed the vision of those on East Fourth Street of traffic on South McDowell Street. This building was separated from the vehicular portion of the streets only by the sidewalks of Fourth and McDowell Streets. The width of the sidewalks is not shown nor is the width of Fourth or McDowell Streets disclosed by the evidence. There was nothing on the lot at the southwest intersection to obstruct the view on West Fourth Street.

The ambulance was equipped with red flashing lights and a siren controlled by foot pedal. "The siren was mounted under the hood of the ambulance. The red lights were in the grill one on each side, one on the right and one on the left under the main headlamps. That was in front of the ambulance."

Plaintiff's vehicle, in response to an emergency call, was traveling north on McDowell Street. In the block south of Fourth Street the ambulance was traveling 35 m.p.h.—the maximum speed under the congested traffic conditions. It was in the easternmost lane of McDowell Street. The operator was familiar with the physical conditions at the intersection. One of the operators of the ambulance, the only witness testifying as to how the collision occurred, said: "As we approached the intersection of Fourth and McDowell with the siren on the very highest peak, the red lights flashing, we noticed that we had a congested intersection. We entered the intersection in the middle of McDowell Street, which is a four-lane street. We were centering the road, trying to get as close to the center of the intersection as possible. We approached the intersection, knowing that we had a red light facing us which we could see approximately a block before we got to the intersection, with the congested intersection ahead as we could see, we slowed the vehicle to approximately 20 miles an hour entering the intersection. We noticed that as we approached the intersection there was a car, a car to the left headed east on Fourth Street which stopped. We noticed on the other side of the intersection

on McDowell Street, headed South the cars were stopped facing us. As we pulled into the intersection we saw this Yellow Cab stop at the intersection of Fourth and McDowell coming west and everyone was stopped and looked as if we had clearance to go through. I told Mr. Smith, who was driving, that it looked like we had a clear road to go ahead. We proceeded to go through the intersection. About the middle of the intersection, and as we approached the intersection after our car had pulled out into the street we noticed a bus coming on the righthand lane on Fourth Street going west. As we pulled under the red light of Fourth Street on the way through the intersection, the bus struck us on the right side. . . . We were in the left center lane as we approached the intersection. When we were behind this grill, we jumped over and got in just about the center of the road. As we approached the intersection this is on the left side, I saw this taxicab come to a halt even with the intersection. He was back even with the intersection about like this. We did not notice the bus until we got in the intersection right at the red light. We could see the bus moving up from behind the cab on the righthand side lane next to the curb . . . Having a blind corner, we tried to center the intersection as much as possible . . . as we pulled to the center of McDowell Street and approximately to the end of the grill, to the back of the grill, I could see the front of the taxicab. I could see the front of the taxicab stop. Prior to that time, I was completely blind as to what traffic was going on Fourth Street. The light was green to that traffic. . . . My vision down Fourth Street was obstructed as far as seeing further than the taxicab at the point where the ambulance is now. I could not see any further than the crosswalk going across Fourth Street on the eastern side of this intersection until I got to the point that the ambulance is now I could see the cab. It stands to reason that if I could not see them, they could not see me."

What is the law applicable to the factual situation here presented?

The provisions of the ordinances referred to in the pleadings are not in the record. Plaintiff, in its brief, quotes the provisions of the ordinance referred to in the complaint. As there quoted it merely exempts vehicles of the police department and ambulances from the provisions of the city's ordinances regulating the operation and parking of motor vehicles. We are not informed as to the provisions of the ordinances which by the section quoted in the brief are made inapplicable to police vehicles and ambulances, nor are we given any information as to the provisions of the ordinance, sec. 24(c), pleaded by defendant. The rights of the parties are, therefore, to be determined by ascertaining applicable State statutes and the conduct to be expected of the reasonably prudent operator of a motor vehicle under the conditions existing at the time and place of this collision.

By 1937 the number of motor vehicles operating on our streets and highways had increased to such proportions that the Legislature felt compelled to deal with the problems arising from their use. The caption to c. 407, P. L. 1937, recites the purpose, *inter alia*, "TO REGULATE THE OPERATION OF VEHICLES ON HIGHWAYS; TO PROVIDE PENALTIES FOR THE VIOLATION OF THIS ACT, AND TO MAKE UNIFORM THE SUBJECT MATTER THEREOF." The provisions of that Act with the modifications made by subsequent Legislatures are now incorporated as art. 3 of c. 20 of the General Statutes. Part 9 deals with equipment requisite to lawful use of the highways. Part 10 prescribes the rules of the road for vehicles lawfully using the highways.

Fundamental to the right to operate any motor vehicle is the rule of the prudent man declared in G.S. 20-140, that he shall operate with due care and circumspection so as not to endanger others by his reckless driving. Subject to this broad qualification, provisions are made to determine priorities in the use of intersecting highways. G.S. 20-155 announces the rule with respect to intersections not covered by other rules. *Mallette v. Cleaners*, 245 NC 652, 97 SE 2d 245.

The Legislature took recognition of the fact that all highway intersections are not of equal importance because of the density of traffic on one highway as compared to the flow on an intersecting highway. Hence a rule was prescribed for this situation requiring operators of motor vehicles on a servient highway to stop in accordance with signs commanding them to do so. G.S. 20-158(a). This rule was supplemented in 1955 by the provisions of G.S. 20-158.1. To meet situations not adequately provided for in G.S. 20-155 and 20-158(a) traffic lights were authorized with priorities determined by the color of the light exhibited to the motorist. G.S. 20-158(c). This statutory provision with respect to traffic lights is limited to those lights outside of towns and cities, but cities are not denied the authority to regulate the movement of traffic at street intersections. G.S. 20-158(b).

The violation of statutory rules of the road designed to provide for human safety is either negligence *per se, Currin v. Williams, ante,* p. 32, *Troxler v. Motor Lines,* 240 N.C. 420, 82 S.E. 2d 342, *Morgan v. Coach Co.,* 225 N.C. 668, 36 S.E. 2d 263, or the basis on which a jury can find negligence if the statute declares its violation shall not constitute negligence as a matter of law. G.S. 20-158(a) so declares.

The force and meaning of the traffic lights described in this case are not on the record declared by State statute or city ordinance. The intersection being within the corporate limits, G.S. 20-158(c) has no application. The force and effect of the traffic light, if any, as fixed by an ordinance of the City of Charlotte does not appear. We cannot

take judicial notice of the provisions of municipal ordinances. *S. v. Clyburn,* 247 N.C. 455.

The use of traffic lights is so general and the meaning of each color so well understood that one who operates his motor vehicle in disregard of these well-understood meanings cannot be said to be a prudent person; one who operates in accord with these meanings is not to be condemned for so doing. "A red light is recognized by common usage as a method of giving warning of danger. . . ." *Weavil v. Trading Post,* 245 N.C. 106, 95 S.E. 2d 533. "A green or 'go' signal is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated." *Hyder v. Battery Co., Inc.,* 242 N.C. 553, 89 SE 2d 124.

The statute which declared the rules of the road and fixed priorities at intersections granted a conditional priority to certain vehicles used for emergency purposes. S. 118 of that Act, now G.S. 20-156, provides: "The driver of a vehicle upon a highway shall yield the right-of-way to . . . public and private ambulances when . . . operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve . . . a . . . public or private ambulance from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequences of any arbitrary exercise of such right-of-way."

No duty rests on the operator of a motor vehicle making normal use of a highway to yield the right of way to another vehicle on an emergency mission until an appropriate warning has been directed to him, and he has reasonable opportunity to yield his prior right. The audible sound which the statute, G.S. 20-156(b), requires is such a sound as was in fact heard and comprehended, or should have been heard and its meaning understood, by a reasonably prudent operator called upon to yield the right of way. *Balthasar v. Pacific Electric R. Co.,* 202 P 37, 19 ALR 452; *Russell v. Nadeau,* 29 A 2d 916; *Baltimore Transit Co. v. Young,* 56 A 2d 140; 60 C.J.S. 924; 5A Am. Jur. 416.

The Legislature, in prescribing practical warning devices for use on motor vehicles, drew a distinction between vehicles making normal use of the highway and those engaged in emergency uses. For normal use, a horn audible for 200 feet under normal conditions was deemed adequate, G.S. 20-125(a); but something different and manifestly with a more authoritative voice and greater volume was expected of vehicles on emergency errands. G.S. 20-125(b). A violation of this statutory provision is a crime. G.S. 20-176.

The mere statement that the ambulance approached the intersection "with the siren on the very highest peak," without further evi-

dence to show that defendant's driver heard or should have heard and, as a prudent operator, appreciated the demand to yield, is insufficient to establish the asserted negligence. There is no evidence that it was in fact heard. To the contrary such evidence as there is indicates that the siren was in fact not heard by the operator of defendant's vehicle.

Concededly, the vision of the driver of each vehicle was obstructed until he was in, or practically in, the intersection. Plaintiff argues that defendant's driver should have heard because southbound traffic on McDowell Street stopped. Two answers may be given to that: (1) that they were confronted by a red traffic light forbidding them to move; (2) that their vision of plaintiff's vehicle was not obstructed. It argues that traffic on West Fourth Street headed east, although it had a green light, did not move. But the evidence discloses that their view down McDowell Street was, unlike that of defendant's driver, unobstructed. It is a fair inference that they saw plaintiff's vehicle approach and for that reason stopped. It is argued that the cab on East Fourth Street headed west also stopped at the edge of the intersection. It does not appear that it stopped because of the sound. It may have stopped because its driver saw the ambulance approach, or for some other reason. The evidence offered failed to establish a violation of the provisions of G.S. 20-156(b).

The collision occurred in the northern portion of the intersection. It is manifest that the vehicles entered the intersection at approximately the same time, as that phrase is used in the statute. Negligence in that respect has not been established. *Taylor v. Brake,* 245 N.C. 553, 96 S.E. 2d 686; *Bennett v. Stephenson,* 237 N.C. 377, 75 SE 2d 147; *Freeman v. Preddy,* 237 N.C. 734, 76 S.E. 2d 159; *S. v. Hill,* 233 N.C. 61, 62 S.E. 2d 532. In evaluating the action of defendant's driver and the asserted violation of G.S. 20-140, it must be borne in mind that he was in the northernmost lane of East Fourth Street. Traffic was heavy. He had a green light indicating his right to proceed through the intersection. In accepting the invitation without notice that it was dangerous to do so, defendant did not violate the provisions of the reckless driving statute.

Plaintiff, having failed to prove a violation of any of the statutory provisions alleged, has failed to establish defendant's negligence as a proximate cause of the collision. This renders unnecessary consideration and discussion of the asserted negligence of the driver of plaintiff's vehicle.

Affirmed.

PARKER, J., concurs in result.

PERRELL v. SERVICE CO.

JOHNSON, J., dissenting. As I interpret the majority opinion, it holds that the plaintiff's case fails because there was no evidence tending to show that the sound of the siren was loud enough to justify the inference that the bus driver heard, or should have heard, the signal in time for him, "as a prudent operator," to have yielded the right of way. True, no witness testified as to the approximate distance the siren was heard or should have been heard ahead of the ambulance and eastwardly along Fourth Street as it approached the intersection going north on McDowell Street. However, the evidence does disclose that the siren was "on the very highest peak" and that the traffic light in front of the ambulance was showing red. This means that traffic on the side street, Fourth Street, had the green light. Notwithstanding this, a car going east on Fourth Street pulled up at the intersection and yielded the right of way to the ambulance. Similarly, a taxi going west on Fourth Street pulled up on the other side of the intersection and yielded the right of way to the ambulance. The foregoing evidence, it seems to me, is sufficient to justify the inference that the driver of the bus should have heard and heeded the siren in time to yield the right of way, as did the other two motorists on Fourth Street. Conceding, as suggested in the majority opinion, that the other two motorists may have seen the ambulance approaching and relied on their senses of sight in yielding the right of way, even so, this is only one of two permissive inferences, the other being that the motorists approaching on Fourth Street first heard the siren and relied on their senses of hearing as they made ready to stop and yield the right of way. All things considered, I think it was a case for the jury. My vote is to reverse the nonsuit.

BOBBITT, J., concurs in dissent.